UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE INVENSENSE, INC. SECURITIES LITIGATION. | Case No. 15-cv-00084-JD<br><br>**ORDER DISMISSING CASE**<br>Re: Dkt. No. 80 |

In this securities fraud class action, defendants challenge plaintiff's first amended complaint for failing to state actionable claims. Dkt. No. 80. The complaint is dismissed with prejudice and the case is ordered closed.

## DISCUSSION

### I.  INVENTORY CLAIMS (STATEMENT NOS. 1-3)

The Court dismissed plaintiff's first effort to state inventory-related claims for failing to plead falsity adequately. *See* Dkt. No. 78. Specifically, plaintiff did not state with particularity the facts on which plaintiff's information and belief were formed. *Id*. at 6-7 (citing 15 U.S.C. § 78u-4(b)(1)). The Court expressly advised plaintiff that, while a confidential witness or informant is by no means a mandatory factor, it needed "to identify *some* source for how it knows of the key, very detailed factual allegations in its complaint that support its theory of falsity, *e.g.*, that 'by the end of June 2013, InvenSense had built up an inventory of approximately 20 million 3-axis MEMS chips that were specifically for the iPhone 5S and 5C'; or that these chips, which had an 'approximate cost of $0.44 per chip' became unsalable because, among other things, they 'suffered from manufacturing yield problems and did not meet any high-volume customer's specifications.'" *Id*. at 7 (quoting Dkt. No. 62 ¶¶ 8, 58-60).

The inventory claims in the amended complaint again do not meet this basic pleading obligation. The foundational factual allegation upon which these claims hinge is that the "excess or obsolete" inventory InvenSense later had to write down in fact consisted of "20 million 3-axis MEMS chips that had been manufactured for use in the iPhone 5S and 5C in the summer of 2013, but never sold to Apple." Dkt. No. 79 ¶ 47. There can be no question that without this fact, the inventory claims cannot stand. *See* Dkt. No. 79-1 at 1-2 (explaining that the reason why Statement Nos. 1-3 were false and misleading is because the later written-off inventory "was primarily comprised of approximately 20 million chips leftover from the Apple design loss with the iPhone 5S and 5C" which the Company improperly failed to write off earlier).

Despite another chance to explain why or how it knows or believes this foundational fact to be true, plaintiff's allegations remain materially unchanged. Plaintiff says paragraphs 48 to 50 of the amended complaint lay out the bases for its information and belief, *see* Dkt. No. 86 at 2-3, but that is not the case. In *Berson v. Applied Signal Technology, Inc.*, 527 F.3d 982 (9th Cir. 2008), an analogous foundational fact was the existence of four "stop-work orders." Plaintiffs alleged those orders made Applied Signal's backlog reports misleading because the reports included work Applied Signal was unlikely ever to perform because it "had been halted [by the stop-work orders] and was likely to be lost forever." *Id*. at 984. The circuit rejected the falsity challenge because the complaint had "identifie[d] four confidential witnesses who worked for Applied Signal and who allegedly will testify to the existence and effect of the stop-work orders." *Id*. at 985. These confidential witness employees were of a type where it was "entirely plausible" that they "would know, or could reasonably deduce, that the company had suffered such setbacks." *Id*. The circuit expressly held that plaintiffs had "allege[d] the existence . . . of the stop-work orders with particularity," where for the second stop-work order, the complaint contained statements by one of the confidential witnesses that "the order followed a 'series' of client meetings where 'management' tried unsuccessfully to 'negotiate away' certain contract requirements." *Id*. at 987 & 988 n. 5. The circuit also observed that "a different confidential witness will allegedly testify that the third stop-work order caused the company to reassign '50-75 employees,' with the result that one of the company's facilities became a 'ghost town.'" *Id*.

The scant factual allegations here about the supposed existence of the 20 million 3-axis MEMS chips are qualitative worlds apart from the allegations upheld in *Berson*. It is true that plaintiff now makes a passing reference to a confidential witness. *See* Dkt. No. 79 ¶ 50 ("In addition to the above sources, Lead Plaintiff's allegations regarding InvenSense's inventory of and inability to sell the 20 million 3-axis MEMS chips that had been manufactured for use in the iPhone 5S and 5C are based on and corroborated by investigative interviews with a former InvenSense officer who has requested to remain anonymous."). But this allegation is so sparse and conclusory that it does not add materially to the soundness of the complaint. *Cf. Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 995 (9th Cir. 2009) (for complaint relying on statements from confidential witnesses to satisfy PSLRA pleading requirements, confidential witness "must be described with sufficient particularity to establish their reliability and personal knowledge"). Not only is the confidential witness barely described, the complaint does not offer up any specific statements by the confidential witness at all.

The other allegations are also insufficient. Plaintiff has added citations to the Company's own SEC filings and a handful of third-party articles and reports. Dkt. No. 79 ¶¶ 48-49. But the Company's SEC filings did not reveal that its obsolete inventory consisted of 20 million 3-axis MEMS chips -- if they had, there would be no securities fraud case at all. And the speculations of some journalists and analysts along the same lines as plaintiff do not make them useful "sources" for plaintiff's claims. Allegations of this kind fail to meet the PSLRA's requirement that falsity be pled with particularity under 15 U.S.C. § 78u-4(b)(1). *See Rubke v. Capitol Bancorp Ltd*, 551 F.3d 1156, 1166 (9th Cir. 2009) ("Rubke has failed to reveal 'the sources of her information' with regard to the telephone conversations, and has not otherwise described how she knows that Capitol 'exhorted' Pedisich to make the calls. Thus, she has not properly alleged the falsity of these statements under the PSLRA.") (internal citations omitted); *Applestein v. Medivation, Inc.*, 561 Fed. Appx. 598, 600 (9th Cir. 2014) ("uncredited and speculative conclusions do not 'provide an adequate basis for believing that the defendants' statements were false'") (quoting *Zucco Partners*, 552 F.3d at 995); *see also In re: FVC.com Sec. Litig.*, 32 Fed. Appx. 338, 340 (9th Cir. 2002) (finding plaintiffs' scienter allegations deficient where complaint contained nothing to suggest that

3

1    plaintiffs' allegations were "based on anything other than mere speculation. That is precisely the
2    kind of allegation that the PSLRA is designed to defeat at the pleading stage.").

## II.     PRICING CLAIM (STATEMENT NO. 4)

The Court dismissed with prejudice plaintiff's gross margin claims, *see* Dkt. No. 78 at 8-12, and plaintiff has now turned to a pricing claim. *See* Dkt. No. 79-1 at 8, Statement No. 4 (identifying 7/29/14 statement by Krock on an earnings conference call: "But generally it's about the value of these sensor function [*sic*] in the market with the Gyro and integrated sensor attached. So there's no one customer with any particular window of pricing that's relevant."). Plaintiff says that this statement was false and misleading because "[d]efendants lacked a reasonable basis to assure investors that ASPs would be 'consistent' with prior quarters. Apple's purchase order with InvenSense for at least 35 million 6-axis MEMS chips a quarter for its iPhone 6 and 6 Plus was at heavily discounted prices that [*sic*] the Company's margins on those chips would only be approximately 40%." *Id.*

But just reading those two columns side by side makes plain why this new statement does not support a claim. "At the pleading stage, a complaint alleging claims under Section 10(b) and Rule 10b-5 must not only meet the requirements of Rule 8, but must satisfy the heightened pleading requirements of both Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act ('PSLRA')." *In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 876 (9th Cir. 2012). Under Rule 8, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Rule 9(b) requires "particularized allegations of the circumstances constituting fraud, including identifying the statements at issue and setting forth what is false or misleading about the statement and why the statements were false or misleading at the time they were made." *In re Rigel*, 697 F.3d at 876. And under the PSLRA, to properly allege falsity, a securities fraud complaint must "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1).

Plaintiff has not met any of these requirements for the new pricing claim because there is a mismatch between the statement identified as false and misleading on the one hand, and the

reasons why plaintiff says the statement was false or misleading on the other. On its face, Krock's July 29, 2014 statement said nothing about "ASPs" or the "Company's margins." *See* Dkt. No. 79-1 at 8. Moreover, reading the statement in its full context makes it even more clear that Krock was discussing periods of time during which pricing could be negotiated, and not whether there was or was not any particular customer whose band of pricing might be significant for the Company's overall financial outlook. *See* Dkt. No. 81-1, Ex. 1 at 21 (transcript of 7/29/2014 InvenSense earnings call, in which Krock discussed customers' "unique schedules for negotiation of pricing").

Accordingly, for the new pricing claim, plaintiff has failed to plead falsity whether measured under Rule 8, Rule 9(b) or the PSLRA.

**III.    SCIENTER AND 20(a) CLAIM**

Because plaintiff has failed once again to sufficiently plead falsity as required by the PSLRA, the Court need not reach the issue of scienter for plaintiff's Section 10(b)/Rule 10b-5 claim. Furthermore, because plaintiff has not adequately pled a violation of Section 10(b), plaintiff's Section 20(a) "control person liability" claim must also be dismissed. *See Oregon Pub. Emps. Ret. Fund v. Apollo Group Inc.*, 774 F.3d 598, 610 (9th Cir. 2014).

**IV.    LEAVE TO AMEND**

Plaintiff has not requested a further opportunity to amend its complaint, *see* Dkt. No. 86, and the Court sees no good reason to grant it at this stage of the case. As here, "where the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, the district court's discretion to deny leave to amend is particularly broad." *Zucco Partners*, 552 F.3d at 1007 (internal quotations omitted). The fact that plaintiff failed to correct the deficiencies the Court previously pointed out "is a strong indication that the plaintiffs have no additional facts to plead." *Id*. Because it is clear plaintiff has made its best case and that best case is still wanting, the Court will not grant plaintiff a further opportunity to amend.

//

//

//

# CONCLUSION

Plaintiff's first amended complaint is dismissed with prejudice. The Clerk will enter judgment and close the case.

**IT IS SO ORDERED.**

Dated: April 12, 2017

JAMES DONATO
United States District Judge